Good morning, Your Honors. Good morning. May it please the Court, if I could reserve about five minutes for rebuttal. Thank you. All right. The case here is relatively simple with some complications within it procedurally. The action is based on my client. My name is Nicholas Jerkwitz. I represent the appellant, Dr. Babaali. What we have here is a procedure whereby Medicare has adjudicated within its intermediary system that a physician has been overpaid for services provided. The specific services are not relevant to today's adjudication. And there is a mechanism in place, a procedural mechanism in place to contest that determination of overpayment and to challenge the government on their recoupment process. The problem with the system is there is a five-level step of appeal. And after the second level of appeal, recoupment begins whereby the physician is no longer paid for the services they rendered to Medicare until Medicare recoups all the money, in this case, several million dollars. We're here before you today. This case is a challenge of the due process, a violation of due process based upon that system and a mandamus action to require the agency to proceed in a manner consistent with the language of the statute. What exactly do you want the Court here to do? What would the writ say? The writ would, we would request two things based upon the writ if the amendment were to go forward, and that is that the agency, one, proceed within the statutory time limit of providing and adjudicating the administrative level of appeal within 90 days. And also to Well, they already busted that deadline, right? Oh, yes, Your Honor. We're well past that deadline. But still it could, right now the backlog is such that I believe So you want to go to the head of the line? No, not us specifically go to the head of the line. Rather, every case be adjudicated within those 90 days as required by the statute. I understand that and I believe, and I understand you believe you're entitled to that, but obtaining that relief gets us into the realm of fantasy. It's never going to happen. They do not have the resources that thousands of these cases around the country. I understand that, Your Honor, and I don't So what is it that you want from us that you think we might be able to do for you? I think, if I may, the point you raise is very good. However, the statute says what the statute says. If the agency can't meet that requirement, it goes back to Congress and Congress should rewrite the statute. As the statute is written here today, we're simply asking the court to interpret the statute the way it is and Right, I understand that. So what is it you want? What would the decreal paragraph of our opinion say? I think it would say something to the effect of adjudicate it within 90 days That's not going to happen. That's a fantasy. In the event you can't, then stop the recoupment process until the agency is able to meet their requirement of adjudicating and giving us the administrative law hearing. But what would, let me just go back to clarify. First, you said that it's not just for your cases. So would you clarify, are you asking for mandamus on behalf of Dr. Rebali and his medical group or for everybody who's in the recoupment process? Yes, Your Honor. Both. Okay. Both. The mandamus is the ministerial duty to adjudicate within 90 days. That's the And so the second point there is you have two different statutory or regulatory provisions going here. You have the hearing provision and then you have the recoupment provision. And there's nothing in the recoupment provision that says you can't recoup as things go along. It says that they may begin recoupment as soon as you've resolved this request for redetermination. So my concern with your argument is that you're trying to take a discretionary duty or one that's not mandatory with respect to recoupment and glue it on to the hearing requirement. And what's the authority that we would be able to do that? Well, I think, Your Honor, the issue there is the due process violation and that is that if I can't get the administrative hearing in time, as the statute requires and as the legislature believed necessary, by recouping, you've essentially taken away my right to the administrative law hearing. Because by the time I get there in four to five years, in a case like this where we're talking about millions of dollars, the doctor's going to be out of business. You're done. You've taken away that opportunity for the administrative law proceeding. Is it your understanding that under this administrative scheme, you are entitled to any relief from the recoupment process, a stay of it or extending the period or anything of that sort? What's your understanding of how that works? I believe, Your Honor, under the administrative scheme, there is no process for staying the recoupment after the second level of appeal. And the second level is just before the ALJ hearing? The third level is before the ALJ. The second level is called reconsideration and it's before qualified independent contractor. And so once you get through that, it's your position, that level, it's your position that recoupment becomes automatic? Correct, Your Honor. And so where are we now? We are now, after the QIC, the Qualified Independent Contractor, that's round two, after that, you seek an ALJ hearing. Yeah, where are you now? You're between two and three? Correct, Your Honor. And we'll be, according to the backlog now, four to five years before we get that hearing. And what is not the, what you're asking here, isn't that the subject of the D.C. litigation? Well, I would say it is very similar to that, Your Honor. What's the difference? The only difference, no, what we're trying to do with the amendment would be entirely consistent with the D.C. action. The only thing I'd say is I don't think the D.C. action really addressed this at the end. They reached some sort of resolution that doesn't fully address what we're seeking here, which is a stay of recoupment. Well, but the difference is that your stay of recoupment, as I said before, is glued on to this hearing component, doesn't the D.C. The first thing you ask us is do you want a standalone stay of recoupment? Yes. And I can't see that we have any authority to grant that. Can you give me what authority that would be? I agree with Your Honors. I can't pull up a case that says this has been done in the past. Well, can you make an argument that we have the authority to do this? Or statute or a regulation? Yes, Your Honors. And what I would argue is, again, a violation of the due process. If I don't get that ALJ hearing for four to five years and recoupment begins within 120 or 180 days, when you're talking about a case like this where there's millions of dollars, you're done. So it's your position that you don't believe that there's any mechanism available to you to delay or postpone the recoupment pending the hearing? Other than this, yes, Your Honor. Okay. So why can't you could skip the hearing and go to stage four. Why are you not doing that? Because, Your Honor, to escalate this would not be, first of all, to escalate this, as you're suggesting, would not allow us the general relief we're seeking from the mandamus because it is a major systemic failure. But in addition to that... What wouldn't it allow you? It wouldn't fix this problem within the Medicare system. So it's part of our relief is this mandamus requests... In other words, you want us to order the system to get fixed. I mean, that seems like, as you see... Yeah, I apologize. I mean, it's like, yes, we'd like the Social Security system to get fixed, the Medicare system... The highways. The VA. The roads. I mean, the list goes on. Okay. Yes. I perhaps misspoke. I'm sorry, Your Honor. I don't mean to fix the system. I was poor choice of words. Rather to require the statute be followed as it's written. But isn't that what the D.C. litigation does? In part. Are you a member of that class? Am I a member of the class? In D.C. Your client. No. No, we're not. So your client wouldn't be a member of that class? Well, okay, no. I'm sorry. Well, I believe the class is broad enough to encompass all Medicare beneficiaries. Right. So yes, we would be a member of that class. So you're already a member of a class where the court has ordered that the agency needs to expedite or comply with the statute, correct? Yes, but I believe the resolution from that is going to be now it's going to be three to four years as opposed to four to five. Well, in the D.C. litigation, can the agency go ahead with recoupment? I don't know about the specific claims there, but I don't see why not. If it's similar to that, yes, they could recoup. But would anything preclude the agency, they order your recoupment, and then let's say it takes 180 days instead of 90 days. There's nothing that would preclude the recoupment within that period, correct? I agree, Your Honor. So that's, I think, the conundrum here is that the recoupment as a standalone remedy they have great authority to do that. You just object to that. I mean, it's a little bit like when the taxpayer has to decide on paying the taxes or how to contest the tax assessment. You know, the tax assessment is there, and sometimes you just have to pay it and then go to court. So you're not without a remedy, correct? What I would say to that, Your Honor, is the administrative law proceeding is essential to giving my client his rights to contest this action taken by the government. When you recoup, when you, the government, recoups, before I get to that point, I'm denied my due process of getting to that point and having that hearing. Your adversary says more than one time that you just simply have not exhausted your administrative remedies. Therefore, we don't really have jurisdiction to hear your claims. What's your response to that? My response would be, Your Honor, to look at the Eldridge waiver, that their presentment here has been made by seeking this challenge, and the waiver of the exhaustion. But there's an administrative scheme, and to the extent we as Article III courts are part of it, we're at the end of it. You've got other administrative remedies you have not exhausted, they say. Again, I think they're referring to escalating this, and I just don't think escalating this gives my client the relief in a reasonable manner that he's entitled to. Having to go to the next level. Why? Because, in all likelihood, skipping the third level, the ALJ, you'll go to the next level, that'll be denied, and then you have to go into court, and now But what happens at the next level? Give us a thumbnail about the fourth level. The fourth level, I believe, is a specific agency review of the administrative By whom? I apologize, Your Honor, I don't know specifically who within the agency What standards? Is someone entitled to a presumption of some sort or another by that time? I mean, are the findings that you owe this money entitled to some sort of presumption of correctness or something like that by the fourth step? I believe, Your Honor, I'm not 100 percent, I believe it's an independent review. Sorry? I believe it's an independent review. So why wouldn't you go It's a de novo review of the issue. I believe so, but I apologize, I'm not fully It just seems to me that to come here and ask us to upend the system when you have a potential avenue which you could go for, and then you could challenge maybe that avenue isn't sufficient or maybe they'll make a procedural or constitutional error, that you really defeat the whole administrative system if you don't try to advantage yourself of an administrative avenue. If I could add just at the end, Your Honor, to that, let's say we did that and we went straight to court. We went to the fourth level, ended, we went straight to court, we're back Well, you went to the fourth level and what if you win? Yes, Your Honor. Well, I mean, but you might win. That's true, Your Honor. And then we wouldn't be all out of here. That's true. That's a good point. I just don't understand from a client's point of view as opposed to an abstract point of view why you wouldn't go and if you think you're right and these classifications are, as you say, and the government is wrong, I don't know why you wouldn't want to roll your dice and say let's get this over with. I believe that would be an inadequate opportunity because absent the hearing, I haven't presented my evidence, my experts. This is a complicated issue of whether or not a particular procedure falls under a CPT code. You wouldn't be able to do that at the DAB level or whatever it's called? Not in a hearing procedure like with an administrative law judge in a hearing. What's the difference? The fourth level is more of a written appeal. This is almost like a legal question, though, as to whether something falls. But the written appeal doesn't mean that you're not going to be able to provide expert affidavits and expert information as to why your category is correct, does it? I apologize, Your Honor. I'm not 100% sure on that level of appeal. I wasn't. You can call witnesses at the hearing? Yes. Do you have subpoena power? Can you call government witnesses? No, I don't think so. Let's hear from the government. Okay, thank you. Thank you, Your Honor, and may it please the Court. Joshua Salzman on behalf of HHS. The District Court correctly rejected Plaintiff's Mandamus claim as it was originally presented, where he was seeking the relief of that stay of recoupment based on the alleged failure to follow the 90-day deadline. As the Court correctly pointed out during the first part of this argument and as the District Court recognized, there's a fundamental mismatch between gluing on a remedy that the plaintiff originally sought here onto the alleged statutory violation. That was the primary basis on which the District Court rejected that claim, and in this Court, Plaintiff has never really taken on that logic. Okay, Counsel. Let's grant for a minute that Mandamus might be a stretch, but the problem that you have, as far as I see it, is it's hard for me to think of a more palpable violation of due process than what you have here, and the reason is there's a statutory scheme that requires a hearing within 90 days, and the flip side of that coin is you can start prompt recoupment processes. The way the system is fundamentally broken. So as I hear it, you are arguing that, well, we're still entitled to the recoupment remedy, but we don't have to give them a hearing. So, Your Honor, Why is that not a due process violation? Well, for starters, I want to emphasize that once we're talking about due process, it's not about the statute. It's about the fundamental threshold requirements of the Fifth Amendment, recognized in precedents like Loudermill and like Matthews v. Eldridge. So the relevant question is only did they get notice and a meaningful opportunity to be heard. Now, the way this scheme is set up, an auditor comes in and identifies a potential overpayment here. Then not one, but two independent reviewers come and check that prior to any recoupment. At each of those two levels of review, plaintiff had the opportunity and, indeed, the obligation to put in any argument of his choice and any evidence of his choice. I'd refer the court, for example, to 42 CFR. Well, if that were true, are you saying that the hearing is redundant? I'm not saying it's redundant, Your Honor, but I'm saying that a statute can provide more process than the Constitution requires. And he has access to two levels of pre-deprivation review coupled with access to post-deprivation review because of that escalation mechanism. The gold standard of post-deprivation review would be judicial review. And if he'd exercised his right to escalate, he could have been in court months ago. But he wants a hearing. Well, a hearing doesn't always mean they're – hearing can mean different things in different contexts. It doesn't always mean a live hearing. He had the opportunity and the obligation to build his administrative record. But tell me what he's entitled to at Stage 3. Can he call – just a second. Can he call witnesses? He can call witnesses. Can he cross-examine the government's witnesses? No, he cannot unless the government chooses to appear. That's 42 CFR 405.1036. What do you mean it chooses to appear? They can just simply not show up? Absolutely, Your Honor. And, indeed, in the majority of cases, the government doesn't show up. And there's no subpoena power over the government, and he has no ability to cross-examine witnesses. And that shouldn't be so surprising to the court, because the way the system is set up, all of the documents needed to establish whether or not he's entitled to payment should be in his possession. He's under an obligation to develop and maintain records that show entitlement to payment, and he can come forward with those records. And by statute, he was, indeed, required to come forward with those records. He comes forth with records showing that this particular, and makes arguments that this particular vascular surgery procedure, you know, falls within Code 2. The government disputes that, right? Yes, Your Honor. And they presumably have, what, experts or surgeons or a skilled agency that disputes that, right? So he is entitled, are you saying he has those experts or we have those experts? Well, he makes his presentation by arguing that his vascular surgical procedure fits into Category 2. Right. And your position is it fits into Category 1. That is what the You carry it with what? So here's how this works. At the first two levels of review, he's entitled to come in with any evidence he wants, including expert affidavits and any other material he wants to put into the, and build that administrative record. That's then reviewed independently by, first, an entity called the Medicare appeals contractor that has independence and no financial stake in this. And then the second level of review is another contractor called the Qualified Independent Contractor. Again, the QIC has access to physicians and the expertise and no financial stake. It's going to issue a reasoned, written decision. So he's had a chance to build an administrative record. Then the statute says you can go up to that third level, that administrative law judge level, unless if the agency is not able to give you that hearing in 90 days, you have the option to skip forward. You can wait if you want, or you can skip forward and go ultimately to court, or first the fourth level of administrative review and then court. Is the agency required to give you a hearing within 90 days? Well, I think there's the statute. This is 1395 FFD1. It says the agency shall give the hearing in 90 days, but it then says in D3 the consequence of failing to do so is it triggers the right to escalate. Now, the D.C. Circuit in the first AHA case said that this was enforceable through mandamus. The Fourth Circuit in the Cumberland County decision went the other way on that. I don't think this Court needs to decide it, because either way the remedy he sought is really just not available, because either he's seeking to enjoin something that the agency is expressly authorized to do, which is recoup. It's expressly authorized. Just to be clear, you can slow down just a little bit. Sorry, Your Honor. The D.C. Circuit case did not involve recoupment. Is that correct? That is not entirely correct, Your Honor. So the D.C. Circuit litigation spanned more than four years and two trips to the D.C. Circuit. Ultimately, in district court, the plaintiffs there sought an array of remedies, including stay of recoupment was, I believe, one of the ones that they ultimately sought. The way the district court ultimately resolved that litigation was that Congress eventually came forward with more funds and the agency was able to say that we'll be able, if this increased funding continues, we'll be able to resolve the backlog by 2022. And we are now under that mandamus order requiring us to fix the backlog by 2022. It's the result of years of work by the agency with innovative settlement, mass settlement plans and various other initiatives and, of course, constantly going back to Congress and asking for the more money. Once that finally came through, we gave the district court a set of projections that said we can reduce the backlog by set percentages over the next several years and ultimately resolve it by 2022. We've been filing regular status reports with the D.C. Circuit and are on pace to hit all of our targets. So if he doesn't want to wait that long, then he would go to the Department of Appeals Board, correct? Right. So he can go to, he can escalate to the Department of Appeals Board. And the other option he has, which the district court noted was an independent reason to rule against him, but he's never acknowledged, is he can seek something called an extended repayment schedule. If you look at footnote eight of the district court's opinion, the court said that that was an independent grounds to reject the mandamus claim here. Now, what the statute says. Has he paid to date? So he has recouped because he's never even asked for an extended repayment schedule. What the extended repayment schedule authorizes. The question, has he paid at this point any of the recoupment demand? So I believe that some, some, though not all of the money has been recouped to date. The way it works is generally the way. How much? Those figures aren't in the record, Your Honor. I can tell you the way this normally works is that. Well, it doesn't really matter how it normally works, we'll ask him. Because first of all, if he's asking for a mandamus against recoupment and he's already paid, that's a different sort of level and order of mandamus than if he hasn't paid, which is a stay against recoupment. So my understanding is that some but not all of the recoupment has occurred so far. The way that works is that he's continuing, he's still a qualified Medicare provider. So when he puts in new claims, some percentage of those new claims or payment on them is withheld to offset the obligation. Sort of like an attachment. Yeah, I think that's a fair way. But if he goes, is it too late for him now to jump the line and go to the Department of Appeals board? No, he can exercise that right to escalate at any time. And what happens when he gets there? Is the government doesn't have to show up and he can put in his written argument about why the government is wrong? Well, so there's a statute that 42 U.S.C. 1395 FF subpart B3 that says to ensure timely presentation of evidence because these first two levels of review are really meaningful. Congress wanted him to come forward with all of his evidence and all of his argument at those first two levels. Now there's a good cause exception. You keep making these arguments as though the hearing is just a bogest or pro forma. That's what comes through to me from your arguments about this. And I found it hard to believe that. I certainly don't want to suggest it's pro forma. It is normally something on the order of a 90 minute telephonic hearing. This is not something in a courtroom where people come forward with witnesses. Ninety nine percent of these are conducted telephonically and they average an hour and a half. And how many adjudicators make the decision? So it's a single administrative law. It's a proceeding before a single administrative law judge. And if if he were to lose that, he would then be able to appeal to the district court. Well, first through the Departmental Appeals Board. And then we already were. That's what we're talking about is the Departmental Appeal Board. Are we talking about the department? I'm sorry. I thought I was being asked about the administrative law judge here. We've tried to escalate and find out what happens when it gets to the DAB. Yeah. So at the DAB, I believe it's three judges, but I'm not 100 percent sure on that. It is de novo review. And there I in candor to the court, I don't want the court to be misled. The DAB also has a backlog at present. How long? But I don't have that figure available. It's kind of amazing. Both sides don't seem to know what's going on here. You know, you're here on behalf of the government saying, well, he didn't exhaust, but he could go to the DAB. And then we ask you about the DAB and you don't seem to know. And we ask him questions about the procedures and he doesn't seem to know. So let me ask you this. If the government doesn't need to show up at the appeals board and he presents his written papers and then they decide however they decide, can the government appeal from that? Is that a final administrative decision? Yes. I believe that's the final decision of the agency and that the right to appeal is generally only exercised by providers, not by the government. So he would then be able to appeal? To district court. To the district court. Yes. Is there any impediment? If you chose, could you go back to your office and call your people up and say recoup all the money tomorrow? There are practical impediments to that. But, again, he has the ability. Well, you know, you'd have to make a phone call maybe. But could you do that? Do you have that power? Yes. I think by statute the agency is expressly authorized once the overpayment determination has been upheld. At two steps. At two steps. We can recoup. But he can also, he has a statutory entitlement to seek an extended repayment schedule to spread that recoupment over a period of up to 60 months. And he's never even attempted to utilize that option. So to the extent that he's saying that he can't ride out the wait until he gets a hearing, he had a mechanism available to him. He told the district court it was, quote, not unhelpful. But he's never even tried to use that mechanism. How then does this attachment kick in, this percentage of withholding on his future payments? Is that a statutory provision? Yes. So the regulation, the statute at a high level authorizes the agency to recoup overpayments. And then the regulations spell out in a little more detail the precise mechanics of how that occurs. But the statute also gives him, as I said, a right to spread that out over 60 months. And if he would experience extreme hardship absent that kind of relief. How long has this percentage recoupment been going on? I'm not entirely sure because at the time he filed, we're here on a motion to dismiss. At the time he filed his complaint. The complaint does not allege that any recoupment had yet occurred. So a lot of the facts that Your Honors are asking about really aren't in the record here because of the timing of how this litigation proceeded. But he is, you are recouping? Again, that is not actually in the record. But I'm informed by the agency that, yes, recoupment is currently occurring. And the extension of recoupment is discretionary? The extension of recoupment, we don't believe it is discretionary. You mean once you ask for it, you're entitled to it? Once, again, the relevant statute is 42 U.S.C. 13. Once you ask for it, are you entitled to it? Or does the agency have discretion to deny it or modify the request? I think the agency is under an obligation to protect the Medicare trust fund by recouping potentially overpaid funds subject to that extended repayment schedule. We don't have all day here. Just answer my question. Answer the question I asked you. I apologize, Your Honor, if I wasn't responsive. The agency understands itself to be under an obligation to collect potentially overpaid funds. And accordingly, it does so subject to that one alternative of the extended repayment schedule, which would spread it over 60 months. But you have, as you understand, your agency's authority, you can't say, well, we won't recoup until you have your hearing. We don't believe that would be consistent with the statute. The statute says may. The statute does say may. It's not just the Medicare statute. The agency construes the other background statutory principles, including the Federal Claims Collection Act, to apply here and accordingly that the agency is under an obligation once that overpayment has been identified to recoup. Mr. Salzman, I think I understand the posture. You overpaid so far as you're concerned. You want recoupment. He pays into you. If he thinks you are demanding more than you're entitled to, then it's his burden to bring in action or do whatever he wants to do to try to clarify the records. Yeah, so he has the access to continue to contest that. And I should note that if he ultimately prevails, we'll repay him with interest for the money that's recouped. But once that overpayment's been upheld twice, the agency wants to protect its interest in those funds by beginning to recoup them. And he has that right to continue litigating the merits of it, both before the agency and ultimately in court. Or if he doesn't want to wait because of the backlog, he can go straight to court. But he's been given a right under the statute to have a hearing. He says, I want a hearing. At the hearing, I think I can defeat all these claims that the government is making. So, again, I would— Well, the agency certainly can't give him a hearing within 90 days. Now, I would, again, emphasize to the court that the statute does not— Can't give him a hearing on any reasonable timetable, correct? Would you agree with that? I'd say within three years, yes. Well, give him an administrative hearing. Again, he has access to the courts. Let's not play games. We're talking clearly about a Stage 3 hearing, a kind of hearing we deal with all the time, for example, in the immigration context. We cannot give him that hearing within 90 days or anything close to 90 days at present. That being said, I want to emphasize again that the statute doesn't necessarily equate to what the due process clause requires. The due process clause has a lower threshold, and all it requires is notice of the opportunity. Instead, look, we just don't want to be bothered. You can't have a hearing. Just go to Stage 4. No hearing. And we're talking in an individual case, or we're talking—you're saying the agency has the capacity to provide the hearing? Let's say the agency said that in this case. Instead of saying three years, let's just not—let's stop going in circles. You're not going to get a hearing. We're not going to give it to you. What relief would he be entitled to in that— I think it's important— —under that hypothetical. It depends whether or not we have the capacity to do it. If you accept the American Hospital Association, the D.C. Circuit's view of how this works and not the Fourth Circuit's view, under the D.C. Circuit's two opinions, he has a right to demand that hearing, and then if the agency has the capacity to give him that hearing, the agency would be—it would be appropriate, I think, to require the agency to do it. But in the second trip up to the D.C. Circuit and the American Hospital Association, that court recognized that an obligation necessarily needs to account for the agency's resources and what's possible. And accordingly, at present, when the agency has a backlog of 312,000 or so appeals and just not the capacity to do it, there's a limit to what can be demanded of the agency until it has a chance to work through this backlog. So I understand that the statutory scheme already almost contemplates this by saying, if you can't get a hearing in 90 days, we permit you to skip that and go to the next level. Absolutely, Your Honor. It contemplates it both through the escalation provision and through the extended repayment schedule. Thank you. I just have one other question. I'm having trouble with, and hopefully you can help me. You know, I'm a physician. I have a good lawyer. I think that if I get to a hearing, I can convince an adjudicator that my coding is correct. I can call my experts. I can put on testimony at the hearing to call into question the government's presentation, to raise credibility issues, to raise inconsistency issues, to do all the kinds of things I can do at a hearing that don't always happen when you're adjudicating on paper. That's why we have hearings. He's denied that. Well, Your Honor, I think from a due process perspective, recognized in cases like Matthews v. Eldridge, sometimes a paper hearing is enough precisely. And indeed, what Matthews v. Eldridge says is the quintessential kind of circumstance where a paper hearing can be enough is when it's going to turn on things like documentary questions of whether or not the particular records support the claims being made there. And while in some cases in these hearings, maybe in some rare cases, credibility would potentially be at issue, Matthews v. Eldridge also says you don't look at the edge case to determine whether a live hearing is required. You look at the general mind run of cases to say, is this the kind of decision where it's so fundamental to due process that you need to be heard in person and that the mere opportunity to put in a written expert report, which he had the opportunity to do at those first two levels of review, wouldn't be sufficient. Why does the agency provide for hearings in light of what you just said? Well, two things, Your Honor. First, I guess the answer is Congress required you to. Yes, Congress required us to. I'm not saying that nothing ever happens at the hearing. The hearing is certainly an additional stage, but it's not necessarily a constitutionally required one. The last thing I'd point out about these hearings is that this same review scheme isn't just used for these provider appeals. This same four-level structure followed by judicial review is used in some other cases where potentially those. What is the burden of proof at stage 4? The last administrative appeal is de novo review. 4 is de novo? 4 is de novo. Okay. Thank you. Thank you. Mr. Jerkowitz, I'm going to give you some rebuttal time. I know we took up a lot of your time with questions, so we'll give him 3 minutes, please. I appreciate that. Thank you, Your Honor. I just want to briefly come back and say I looked at the AHA case, and it is, confirming what the counsel said, it is de novo review. A hearing can be provided in the fourth stage, the DAB review. However, according to regulations, it's only if there's an extraordinary question of law, policy, or fact. Is it correct that you have not asked for any relief from the recoupment process? I believe that is correct. In answering the questions you asked previously to counsel. No, just answer the question I just asked to you. Have you asked for any relief from the recoupment process? I do not know specifically what my client's office has requested in terms of recoupment. What I do know is recoupment did take place and is ongoing, and my client, it's after the record, but my client continues, his business has suffered dramatically, and he's shut offices down, and he's had to terminate people, so the recoupment is ongoing. The statute has a mechanism. It's not complete, and whether it's adequate is another issue, but it does have a process for some relief from recoupment, and I take it that you have not pursued that. In my experience, Your Honor, in dealing with Medicare, the five years that was represented is very rarely, I've never seen that. It's typically a year, 18 months. Interest continues to accrue as you go. But that sort of says, well, so we won't ask at all? No, I'm just saying, Your Honor, that is purely the issue with the stopping recoupment or delaying it or not stopping it, but rather this payment plan, it's discretionary with Medicare, and it does not always result in any real relief to the provider. I mean, $2.1 million over three years versus altogether can be just as devastating to the provider. The problem is that paperwork is what is in control, and your client has an obligation to do the paperwork, doesn't he? And can't he tell from his records whether he's been paid sufficiently? And can he submit whether he's been from paperwork without a hearing based on his paper, whether he's recouped more than he should have, I mean whether he's got to give back more than he should have? Won't paper show all of that? That's a good question, Your Honor, and I would say yes, we presented that in paper, and frankly, the first two appeals are, in my experience, relatively unhelpful to the provider. The first level appeal, I would not call it independent. It's done by the MAC, but the MAC is the entity that made the overpayment in the first place. So the first level appeal, in my experience, rarely changes anything, especially in a complicated case like this. In a very simple case where there's a paper issue or a clerical issue, that may be beneficial. The second level is a qualified independent contractor, but it isn't independent the way we would like to think. They look at the paperwork you give them, and they make decisions. They're not part of the MAC that made the initial determination, but it isn't like a hearing where you present your evidence with an expert witness. In this particular case, you have a very complicated procedure that is relatively new, that, in our opinion, from the provider, fits very nicely within the CPT code, but Medicare, after years of paying this, has determined, no, it doesn't. What did they say about why? Why did they all of a sudden stop paying? What's going on here? It's complicated, Your Honor. The Noridian, so Noridian is the MAC in this case. Noridian issued a local coverage determination on this particular type of procedure at an earlier stage and then ultimately later on started determining, made a conscious effort, and I know this because we represented a number of clients who were dealing with this, just all of a sudden decided that this CPT code doesn't cover this procedure. When these are reviewed, is the deference to the agency as to which box the procedure fits in? When you mean deference, you mean at the first two levels of appeal? Yes. I don't know that there's any specific requirement that they need to give deference, Your Honor, but I think that the first level of appeal is to me. If I were to characterize it, the first level of appeal is a checking of the box by the MAC, just to rubber stamp their decision. Why isn't four adequate? You get de novo at four. Well, as counsel said, it may take forever to get there, but putting that aside. Well, what is the backlog for four? That I don't know, Your Honor. Thank you. Thank you. Thank you both for your argument this morning. The case of Babali v. Azar is submitted.
judges: Parker, Farris, McKeown